[No. 7203.]

## THE CONSUMERS' LEAGUE OF COLORADO V. THE COLORADO & SOUTHERN RAILWAY CO. ET AL.

1. CONSTITUTIONAL LAW—*Railway Commission*—The general assembly has power to create a commission with authority to regulate and control common carriers doing business within the state, and fix the rates to be charged for their service.

2. ——*Presumptions as to Constitutionality of Legislation*—The presumption is that every statute is a constitutional enactment, and this presumption is not overcome until the contrary appears to a demonstration.

3. ——*Classification in Legislation*—If a classification adopted by the legislature is not wholly arbitrary and unreasonable, and if the statute is uniform in its operation upon all the members of the class to which it is made applicable no one is denied the equal protection of the law. All that is necessary to uphold the statute is that an actual, reasonable, and substantial difference is discovered; such difference

existing, it is for the legislature to determine whether different rules shall be prescribed for the different classes of subjects.

A statute providing for the appointment of a commission with authority to control railway companies and other common carriers (Laws 1907 c. 208 sec. 1, Rev. Stat. sec. 5445) excepted from its operation mountain railroads operating "less than twenty miles of road, the principal traffic of which is the hauling of mineral from and supplies to mines." *Held*, that in view of the differences between such railways and ordinary railways, in respect to location, length, character of traffic, cost of construction and maintenance, that the excepted roads are singular in being subject to frequent interruptions and losses by reason of avalanches, that the ores transported by such railways are not a subject of merchandise, that such roads depend for their life of utility and profit upon the permanency of the mines which they serve, and which is continually diminishing, the classification adopted by the legislature is not an arbitrary one, but rests upon a reasonable basis.

4. APPEALS—*Grounds of Decision*—The courts of review will not in any case go beyond the record in that case to discover grounds upon which to declare a statute unconstitutional.

5. STATUTES—*Construction*—An act which assumes to regulate common carriers and repress extortions and unjust discriminations and preferences is to be liberally construed. The title of an act may be referred to to aid in its interpretation.

6. ——*Construed*—A statute for the regulation of common carriers provided for the appointment of a commission, with power, "to execute and enforce the provisions of this act"; declared that all charges for the transportation of property shall be just and reasonable; that upon complaint to such commission, by any person, of anything done or omitted by any carrier "in contravention of any of the provisions" of the act, the commission, if satisfaction were not made by the carrier, should, if reasonable grounds of investigation appeared, "investigate the matters complained of," and report their "decision, order or requirement in the premises"; and the commission were authorized, and it was declared to be their duty, if upon hearing of the said complaint it should be of the opinion that "any of the rates or charges complained of, and demanded, charged or collected * * * or that any regulation or practice whatsoever of such common carrier or carriers affecting such rates or charges, are unjustly discriminatory or unduly preferential in violation of any of the provisions of this act, to determine and prescribe in what respect and to what extent such rates or charges are so discriminatory or preferential, and what regulation or practice in respect to such transportation is just, fair and reasonable to be thereafter allowed, and to make an order that the common carrier shall cease and desist from such violation to the extent to which the commission finds it to exist, and such common carriers shall there-

after conform to the regulation or practice so prescribed" (Laws 1907 c. 208 secs. 12, 13, 14, Rev. Stat. sec. 5456-5459). *Held*, that the power of the commission as to rates, is not confined to the regulation of those which are discriminatory or preferential, but extends to those which are unreasonable; that upon any such complaint the commission is authorized to fix a reasonable rate of charge to be thereafter observed by the carrier.

*Error to Denver District Court.*—Hon. Greeley W. Whitford, Judge.

Hon. Benjamin Griffith, attorney general, Mr. Theodore M. Stuart, Jr., assistant attorney general, Mr. Horace Phelps, Hon. John T. Barnett, attorney general, Mr. James H. Teller, assistant attorney general, Messrs. Vogl & Whitehead, for plaintiff in error.

Mr. E. E. Whitted, Mr. J. M. Cates, for Colorado & Southern Ry. Co. and Chicago, Burlington & Quincy Railroad Co., Messrs. Hughes & Dorsey, Mr. E. I. Thayer, for Union Pacific Railroad Co., defendants in error.

Mr. Justice Musser delivered the opinion of the court.

The plaintiff in error, a domestic corporation, began a proceeding before the state railroad commission, relating to freight rates on coal from the northern Colorado coal fields to Denver. From the order made by the commission, the defendants in error appealed to the district court. There the companies concerned filed a motion to reverse the order of the commission and to dismiss the complaint. The court sustained the motion and dismissed the complaint upon the ground that the law under which the order of the commission was made was unconstitutional and void, and adjudged that all acts and orders of the commission were without authority of law. The matter was brought here for review on error and came on for final hearing as soon as the parties had framed the issues in this court.

The sixteenth general assembly passed an act, approved March 22, 1907, to regulate common carriers in this state,

creating a state railroad commission, and prescribing its pow-ers and duties, and the mode of procedure to be followed in matters brought to its attention.   The defendants in error contend:   First—That the act aforesaid is unconstitutional; Second—That though the act is constitutional, the commission had no power under it to fix rates, and for that reason the judgment should be sustained.   The constitutional question will first be considered.   Section 1 of the act is as follows:

"That the provisions of this act shall apply to common carriers and to any corporation or any person or persons engaged in the transportation of passengers or property, or the receiving, delivering, storing or handling of property shipped or carried from one point or place within this state to any other point or place within this state; *Provided, however,* that this act shall not apply to mountain railroads operating less than twenty miles of road, the principal traffic of which is the hauling of mineral from and supplies to the mines.   This act shall not apply to the ownership, or operation, of street railways conducted solely as common carriers in the transportation of passengers, within the limits of cities and towns, nor to the ownership or operation of private railways not used in the business of any common carriers."

It is claimed that the provision of the act, that it "shall not apply to mountain railroads operating less than twenty miles of road, the principal traffic of which is the hauling of mineral from and supplies to mines," is class legislation, and denies to the defendants in error due process and equal protection of the law, contrary to the Colorado and Federal constitutions.

At this day it is unnecessary to discuss the question of the existence of the power of the general assembly, exercised within constitutional limits, to create a state railroad commission, and to authorize it to regulate and control the service of common carriers in this state, and the rates charged the public for such service.   This must be taken as an established and

acknowledged power of the general assembly. *Granger cases,* 94 U. S.; *Railroad Commission cases,* 116 U. S. 307.

The objects and provisions of the act in question being within the acknowledged power of the general assembly that enacted it, it is well to refer to a well established rule that should govern this court in its consideration of the constitutional question presented. The presumption is that every statute is valid and constitutional, and such presumption is to be overcome only by clear demonstration. In case of doubt every possible presumption and intendment should be made in favor of the constitutionality of the act, and it is to be overthrown only when it is clear and unquestioned that it violates the fundamental law. *The People, etc., v. Rucker,* 5 Colo. 455 at 458 (quoting from and approving Sedgwick Stat. and Com. Law, 409).

"To declare an act of the legislature unconstitutional is always a delicate duty, and one which courts do not feel authorized to perform unless the conflict between the law and the constitution is clear and unmistakable." *People v. Goddard,* 8 Colo. 432 at 437.

"The doctrine is elementary that no act of the general assembly should be declared unconstitutional unless it is clearly and palpably so." *People v. Commissioners,* 12 Colo. 89 at 93.

"A fundamental principle of construction requires those who seek to overthrow a statute on account of its repugnance to a constitutional provision to show the unconstitutionality of the act beyond all reasonable doubt." *Denver City v. Knowles,* 17 Colo. 204 at 211.

"When an act of the legislature is attacked as in violation of the constitution of the United States, or of the state, by familiar rule, we are required to uphold the legislation, unless its unconstitutionality appears beyond all reasonable doubt." *Ind. Ditch Co. v. Agr. Ditch Co.,* 22 Colo. 513 at 528.

"Every statute is presumed to be constitutional. The courts ought not to declare one to be unconstitutional unless

it is clearly so. If there is doubt, the expressed will of the legislature should be sustained." *Munn v. People,* 94 U. S. 113.

It is evident, from the foregoing judicial declarations, that the burden is upon the defendants in error to demonstrate clearly and beyond all reasonable doubt that the statute in question is repugnant to a provision of either the state or federal constitution. They do not deny, and, in fact, their argument and the authorities cited by them show, that the general assembly has the power to classify subjects for legislation. If this classification is not wholly unreasonable and arbitrary, so that the statute is uniform in its operation upon all the members of the class to which it is made applicable, no one is denied the equal protection of the laws guaranteed by the federal constitution.—*N. Y .etc. R. Co. v. New York,* 165 U. S .625; *Dow v. Beidelman,* 125 U. S. 680 at 691; *C. R. I. & P. Ry. Co. v. Ark.,* 219 U. S. 453.

The contention is that the exemption of mountain roads less than twenty miles in length, whose principal traffic is the hauling of minerals from and supplies to mines, is an arbitrary classification without any reasonable basis. It seems to us that there is a substantial difference between the inconsequential roads exempted from and the roads embraced within the operation of the act. That distinction is based upon location, length, and character of traffice. A difference in either one of these things is a real difference. We are not called upon, however, to determine whether a classification, based upon one of these differences, would be arbitrary or not, for the exempted roads must possess every one of the three distinguishing elements. That is certainly a grouping together of roads in a class based upon a real and substantial difference. The exempted roads are really and clearly different from the others. They form a distinct and real class by themselves, possessing clear and well defined differences. There is no arbitrary selection in such a classification as this. It is not a lifting of one road from among others that to all intents and

purposes are clearly surrounded by substantially the same con-
ditions and circumstances, nor does it clearly appear that there
is no reasonable basis for this classification.   There is a differ-
ence in the cost of construction, and it may be said of opera-
tion in the mountains and on the plains.   The very character
of the traffic of these short roads implies that they are con-
structed in the most mountainous and rugged portions of the
state.   Their traffic is subject to the interruptions occasioned
by mountain snows and slides.   It cannot be said that such
short roads, built as they are in the mountains for a short
distance, for the sole purpose, as it were, of tramming ore
from the mines to the principal lines of general transportation
of the state or to a mill, enter very largely or at all into the
general commerce of the state, which it was the evident pur-
pose of the act to regulate as far as transportation is con-
cerned.   The ore transported by them is not a subject of mer-
chandise to be sold in the market to the general public for use
at prices affected by the cost of transportation like coal, lum-
ber and other necessities or commodities, or even logs that
are made into lumber and sold in the general market.   There
is no permanency in those exempted roads.   There is no en-
during scenery or fertile valleys along their route to attract
people.   The very character of their location and business has
a temporary promise only.   Every car of ore hauled over them
lessens their span of life, for their supply of traffic depends
upon the mines, which sooner or later become exhausted,
when the industries carried on about them and the roads them-
selves must pass away.   Even before the mines become ex-
hausted, or, if practically inexhaustible, established ore bodies
are depleted, and a cessation or decrease in the supply for
transportation takes place.   Upon further consideration, other
matters, great or small, might be mentioned that would sup-
port the reasonableness of the classification made.   It thus ap-
pears, upon the face of the act itself, in connection with such
physical and geographical facts, of which the court may take
judicial notice, that the exempted roads are in a class distinct

from any other road in the state.   It thus appears that the
classification is not an arbitrary one, but a real one, and has
a reasonable basis upon which to rest.   How can it be said,
then, this law is unconstitutional when before it can be
declared unconstitutional it must appear beyond all reason-
able doubt that the classification was arbitrary and unreason-
ble?   Even were there doubt as to these matters, nevertheless,
under the authorities cited, the statute would have to be up-
held.   Some claim is made that there was certain evidence in
another case that establishes that the classification was not a
legal one.   If there was such evidence in any such case, it is
not presented to us in this case in the transcript or the abstract.
Surely we need not go beyond these into some other case to
find something upon which to base a holding that the act is
unconstitutional.   It has been seen that on its face the statute
is valid and regular, and that it is general in its terms and is
applicable alike to the class to which it is made applicable.   In
such a case evidence need not be taken to show that the
statute is unconstitutional.

In *N. Y. Elevated R. R.*, 70 N. Y. 321, the court, on
page 351, said:

"Can a court take proof for the purpose of showing a
statute valid and regular upon its face to be unconstitutional?
And does the validity of a law which is required to be general,
and which is general in its terms, depend upon the number of
subjects upon which it can operate, or upon the size of a class
to which it applies?   These questions must be answered in the
negative."

This was approved in *State v. Nelson*, 52 Ohio St. 88.
With the presumption always in favor of the validity of legis-
lation, if the law stood by itself the courts would be compelled
to presume that the different circumstances and conditions sur-
rounding the location, length and character of traffic of the
respective classes were such as to justify a different rule in
respect to them.   All that is necessary to uphold the law is
that there be an actual, reasonable and substantial difference,

and, that existing, it was for the legislature to determine whether separate legislation shall be applied to the two classes. Given the fact of such a difference, it is a part of the legislative power to determine what difference there should be in the prescribed regulations.—*Erb v. Morasch,* 177 U. S. 584.

In *Denver v. Bach,* 26 Colo. 530, an ordinance affected alike all engaged in selling clothing, but as a matter of fact the classification was clearly arbitrary and not based on reason. There was no real difference between clothiers and other persons selling merchandise under the same circumstances and conditions. Hence, the ordinance was held to be class or special legislation. On the other hand, saloonkeepers, one class of merchants, may be singled out and made to close their places of business on Sunday. There is a clear difference between saloonkeepers and other merchants, based on reason, to-wit, public morals, but the law must act uniformly on all saloonkeepers included in its terms, else it becomes class or special legislation.

A statute of New York provided that it should be unlawful for any steam railroad to heat its passenger cars in a certain way, and exempted from its provisions roads less than fifty miles in length. It was contended that this exemption nullified the act, and the supreme court of the United States in *N. Y., N. H. & H. R. R. R. v. New York,* 165 U. S. 628, in reviewing the act, after stating certain reasons why the exemption of the roads might be considered reasonable, said:

"In any event, there is no such discrimination against companies having more than fifty miles of road as to justify the contention that there has been a denial to the companies named in the act of equal protection of the laws. The statute is uniform in its operation upon all railroad companies doing business in the state, of the class to which it is made applicable."

A statute of Arkansas classified railroads according to their length, and provided a maximum schedule of passenger

rates varying with the length of the road. The supreme court of Arkansas, in *Dow v. Beidelman,* 49 Ark. 325, held that the act operated uniformly on every class, and was not special legislation with the constitutional prohibition. The supreme court of the United States, in reviewing the judgment of the state supreme court, in 125 U. S. 680 at 691, said:

"The legislature, in the exercise of its power of regulating fares and freights, may classify the railroads according to the amount of business which they have done or appear likely to do. Whether the classification shall be according to the amount of passengers and freights carried, or of the gross or net earnings, during a previous year, or according to the simpler and more constant test of the length of the line of the railroad, is a matter within the discretion of the legislature. If the same rule is applied to all railroads of the same class, there is no violation of the constitutional provision securing to all the equal protection of the laws."

A statute of Michigan classified the roads for the purpose of fixing passenger rates. The maximum rates in the upper peninsula of Michigan were made higher than those in the lower peninsula. Here was a distinction based on location. The distinction between railroads in the upper and lower peninsulas of Michigan are no more marked than the distinction between railroads in the mountainous half of Colorado and those on the plains of the state. Speaking with reference to this, the supreme court of Michigan, in *Wellman v. C. & C. T. Ry. Co.,* 47 N. W. 489, said:

"And the distinction between the roads of the upper and lower peninsulas must be considered, in the absence of any showing to the contrary, to be a reasonable one."

And after mentioning the facts upon which to base the reasonableness of the distinction, the court further said:

"The conclusion, then, is that the legislature has the power, under the constitutional provision contained in Article 19a, and also independently of it, as shown by the cases cited, to classify the railroads of this state, as it has, according to

the amount of business done, and also as to their location in the upper and lower peninsulas."

In Arkansas, a statute provided that no railroad company should equip any of its freight trains with a crew consisting of less than an engineer, a fireman, a conductor and three brakemen; but lines of road less than fifty miles in length were exempted from the operation of this act. The supreme court of the United States, in *C. R. I. & P. Ry. Co. v. Arkansas,* 219 U. S. 453 at 466, said:

"Under the evidence, there is admittedly some room for controversy as to whether the statute is or was necessary; but it cannot be said that it is so unreasonable as to justify the court in adjudging that it is merely an arbitrary exercise of power and not germane to the objects which evidently the state legislature had in view. It is a means employed by the state to accomplish an object which it is entitled to accomplish, and such means, even if deemed unwise, are not to be condemned or disregarded by the courts; if they have a real relation to that object. And the statute being applicable alike to all belonging to the same class, there is no basis for the contention that there has been a denial of the equal protection of the laws."

Thus we have presented statutes classifying railroads as to location, as to character of traffic, and as to length of track, each of which has been held a reasonable classification, and not special or a denial of the equal protection of the laws.

A statute of Illinois provided for the inspection of coal mines in the state, and the payment of a fee therefor. The act first provided that it would be unlawful for any person, company or corporation to operate any coal mine in the state without first having complied with all the conditions of the statute, and paying all inspection fees. Later, the act was so amended that it applied only to coal mines where more than five men were employed at any one time, thus, exempting mines where less than five men were employed. The United States supreme court, in *St. Louis Cons. Coal Co. v. Illinois,* 185

U. S. 203, upheld this act and said that that was a species of classification which the legislature was at liberty to adopt, provided it was not wholly arbitrary or unreasonable, and further held that it was a reasonable classification. A similar statute in Arkansas that applied to coal mines where ten or more men were employed underground, and not to mines where a less number were employed, was upheld by the supreme court of the United States in *McLean v. Arkansas,* 211 U. S. 539, wherein the court held it was a reasonable foundation for the discrimination, and that it did not deny the equal protection of the law because it applied only to mines employing ten or more men. The court said:

"There is no attempt at unjust or unreasonable discrimination. The law is alike applicable to all mines in the state employing more than ten men underground. It may be presumed to practically regulate the industry when conducted on any considerable scale. We cannot say that there was no reason for exempting from its provisions mines so small as to be in the experimental or formative state and affecting but few men, and not requiring regulation in the interest of the public health, safety, or welfare. We cannot hold, therefore, that this law is so palpably in violation of the constitutional rights involved as to require us, in the exercise of the rights of judicial review, to reverse the judgment of the supreme court of Arkansas, which has affirmed its vitality."

Many other citations could be made showing that courts have upheld statutes classifying subjects of legislation based upon location, or character of traffic, or length of railroad lines. In New Jersey, a statute provided that if any railroad in the state failed to run daily trains for the space of ten days a receiver might be appointed for the road, and by the following proviso exempted certain roads, to-wit:

" 'Provided, that this act shall not apply to any railroad company whose road is constructed at any seaside resort, not exceeding four miles in length, and which was built and in-

tended merely for the transportation of summer travelers and tourists.' "

Here, precisely as in the Colorado statute, the classification was made with respect to the location, length and character of traffic of the roads exempted, and the supreme court of New Jersey upheld the classification as made. After maintaining that the roads might be classified with respect to location and character of traffic, the court said:

"Nor does it appear to us that it was legally objectionable for the legislature to constitute this special class by a reference to the length of the roads for the purpose of classification. The roads could be grouped in no other way, and, looking at the definition of the objects to which this proviso is to be applied, we cannot say that it is either too broad or too narrow, for it appears to embrance the whole of the class to which it properly relates, and nothing more." *Del. B. & C. M. R. R. Co. v. Markley,* 45 N. J. Eq. 139.

Further authorities could be referred to, but enough has been said to clearly demonstrate that the classification made in the act under consideration is not palpably arbitrary, or without reasonable basis, and that being so the only duty remaining for a court is to uphold it. Three cases are cited by the defendants in error, which they insist should govern the disposition of this case. The first is that of *Cotting v. Kansas City Stock Yards Co.,* 183 U. S. 79. There, the legislature passed an act, though general in its terms, but which included only one stock yard, while all other stock yards, surrounded by like circumstances and conditions, were exempted. This appears from the following language of the court:

"It may be assumed, for the purposes of the question now to be considered, that so far as the constitution of Kansas is concerned its legislature may enact a law, general in its terms, and yet so phrased as necessarily to have operation only upon a single individual or corporation, but, while making that concession, we cannot shut our eyes to the fact that this act is precisely the same in its effect as though the legis-

lature had said in terms that the Kansas City stock yards alone shall be subjected to its provisions."

And at the close of the opinion, it plainly appears that the judgment of the court, in holding that the statute was in violation of the fourteenth amendment, was put on the ground solely that it applied only to the Kansas City stock yards company and not to any other company in the state in the same circumstances and conditions. It was a lifting of one stock yards company out of a class to which it undoubtedly belonged, and made the law applicable to it only. Such a law is precisely on the same footing that a law would be lifting out the Colorado & Southern railroad and making it subject to the law, while all other roads like it would be exempted. Certainly this would be an arbitrary and unreasonable classification; but we have no such law before us. Such a statute is clearly distinguished in *St. Louis Cons. Coal Co. v. Ill., supra,* from the one under consideration.

Another case cited is that of *Connelly v. Union Sewer Pipe Co.,* 184 U. S. 540. In that case, there was under consideration a statute of Illinois defining a trust and declaring illegal, "every contract, combination in form of trust or otherwise, or conspiracy in restraint of trade or commerce among the several states, or with foreign nations"—and provided severe penalties for every person violating its provisions. There was exempted from the provisions of the act, agricultural products, or livestock while in the hands of the producer or raiser. It was pointed out in that case that the agricultural products and livestock in Illinois constitute a very large part of the wealth and property of the state; that persons engaged in trade or in the sale of merchandise and commodities, within the limits of the state, were in the same class as agriculturists and raisers of livestock; that is, that they were all engaged alike in domestic trade; that the exemption of the two particular industries from the statute was not of small consequence; but that it included a large part of the property and of the wealth engaged in domestic trade within the state; that

agriculturists and stock raisers could form combinations that would affect the people of the state as greatly as any persons engaged in trade, or in the sale of merchandise or commodities in the state; that the two industries which the statute attempted to exempt were engaged in the sale of merchandise to a similar extent and under like circumstances that others were, who were subjected to the provisions of the statute. This was all so clearly pointed out by the court that the statute was made to appear like a statute would appear were the common carriers of this state subjected to regulations, and the Colorado & Southern and Union Pacific railroads exempted from its provisions. There is no such a statute presented to us for consideration, and therefore the case is inapplicable. The same is true of *L. & N. R. Co. v. Railroad Commission,* 19 Fed. 679, the third case relied upon by defendants in error.

From what has been said, we conclude that the reasons given why the act is unconstitutional are insufficient, and do not demonstrate clearly, palpably and beyond all reasonable doubt, or at all, that the statute is special legislation or denies the equal protection of the laws, and in such a case the plain duty of a court is to uphold the act.

The defendants in error contend that, though the law was constitutional, the commission had no power by the act to fix rates, and that having exceeded its powers the complaint was correctly dismissed. It is not clear that the defendants in error have any right to raise such a question on this record, nor is it clear that the district court made a proper disposition of the case even if it be assumed that the commission had no power to make the order that it did. However, the defendants in error strongly urge this question, and they cannot complain if it be now taken up and determined.

What the commission did was to find what would be a reasonable and remunerative rate; that the rate charged was an unreasonable one, and ordered that the railroad companies should desist and abstain from charging more than the rate found to be reasonable. No claim is made that the rate found

to be proper is too low.  The act in question is a long one, and
in order to show how far reaching it is, it will be abstracted
with some detail.  Its intent is to regulate common carriers
in this state, and in this regard is very comprehensive as is
shown by its title, which is as follows:

"An act to regulate common carriers in this state, to
create a state railroad commission, to prescribe and define its
duties, to fix the salaries of the commissioners and of the em-
ployees of the commission, to prevent the imposition of un-
reasonable rates and charges, to prevent unjust discrimina-
tions, to insure an adequate railway service, to prevent the
giving or receiving of rebates, to prescribe the mode of pro-
cedure and the rules of evidence in relation thereto, to pre-
scribe penalties for violations of this act, to exercise a general
supervision over the conduct and operations of common car-
riers, and to repeal," etc.

Section 1 of the act deals with its application.  Section 2
relates to definitions of terms.  Section 3 provides that all
charges for transportation of property shall be just and rea-
sonable, and prohibits, and declares to be unlawful, every un-
just and unreasonable charge for such service or any part
thereof.  Section 4 prohibits, and declares unlawful, rebates
and discriminations.  Section 5 provides that it shall be un-
lawful to give any undue or unreasonable preference or ad-
vantage to any shipper or freight traffic, or to subject any
particular shipper or freight traffic to any undue or unreason-
able prejudice or disadvantage.  Section 6 provides that every
common carrier shall file and keep schedules of rates; pre-
scribes what the schedules shall contain and that they shall be
posted for inspection.  Section 7 provides that no change shall
be made in the rates until after thirty days' notice.  Section
8 provides that in case any common carrier, subject to the
provisions of the act, shall do, cause, or permit to be done
anything in the act prohibited or declared to be unlawful, or
omit to do anything required to be done, such common carrier
should be liable to the one injured for the full amount of dam-

ages sustained; and provides for the issuance and effect of bills of lading. Section 9 makes violation of the act a misdemeanor, and provides a penalty. Section 10 makes a soliciting of rebates a misdemeanor, and provides a penalty. Section 11 creates the state railroad commission, and provides for the qualification, terms, selection, etc., of commissioners. Section 12 is in part as follows:

"That the commission hereby created shall have authority to inquire into the management of the business of all common carriers subject to the provisions of this act, and shall keep itself informed as to the manner and method in which the same is conducted, and shall have the right to obtain from such common carriers full and complete information necessary to enable the commission to perform the duties and carry out the objects for which it is created; and the commission is hereby authorized and required to execute and enforce the provisions of this act, and upon the request of the commission it shall be the duty of the attorney general to institute all necessary proceedings for the enforcement of the provisions of this act and for the punishment of all violations thereof."

The section then proceeds further with matters of detail. Section 13 provides that any person, firm, corporation or association, or any mercantile, agricultural or manufacturing society, or any body politic, or municipal organization, complaining of anything done or omitted to be done by any common carrier, subject to the provisions of the act, or in contravention of any of its provisions, may apply to said commission by petition, and prescribes what the petition shall contain; that the statement of the charges should be forwarded by the commission to the common carrier complained of, who shall be called upon to satisfy the complaint or to answer the same. If the common carrier makes reparation for the injury alleged, it is relieved of liability for that particular violation of law. If the common carrier does not satisfy the complaint within the time specified, or there shall appear to be any reasonable ground for investigating the complaint, it shall be

the duty of the commission to investigate the matter in such manner and by such means as it shall deem proper. Section 14 provides that whenever an investigation shall be made by the commission, it shall make a report which shall state the conclusions of the commission, together with its decision, order or requirement in the premises, and these reports shall be furnished to the party who may have complained, and to any common carrier that may be complained against, and published. Section 15 is as follows:

"That the commission is authorized and empowered and it shall be its duty whenever after full hearing upon a complaint made as provided herein, or upon complaint of any common carrier, it shall be of opinion that any of the rates, or charges complained of and demanded, charged or collected, by any common carrier or common carriers, subject to the provisions of this act, for the transportation of property as defined by this act, or that any regulation or practice whatsoever of such common carrier or common carriers affecting such rates or charges, are unjustly discriminatory or unduly preferential, in violation of any of the provisions of this act, to determine and prescribe in what respect and to what extent such rates or charges are so discriminatory or preferential, and what regulation or practice in respect to such transportation is just, fair and reasonable to be thereafter followed, and to make an order that the common carrier shall cease and desist from such violation to the extent to which the commission finds the same to exist, and such common carrier or common carrier (carriers) shall thereafter conform to the regulation or practice so prescribed. All orders of the commission shall take effect within such reasonable time not less than thirty days, and shall continue in force for such period of time, not exceeding two years, as shall be prescribed in the order of the commission, unless the same shall be suspended, modified or set aside by the commission, or be suspended, modified or set aside by a court of competent jurisdiction."

Section 16 provides that, if after a hearing the commission shall determine that a complainant is entitled to damages under the. act, it shall make an order directing the common carrier to pay the amount of damages to which complainant is entitled; that it shall be the duty of every common carrier to comply with the order, and if the order is not complied with, the common carrier so failing shall forfeit to the state the sum of one thousand dollars for each offense, and provides for the collection of the forfeiture.   Section 17 provides that, if any parties are injured by the failure or neglect of the common carrier to obey any order of the commission, such party or the commission itself may apply to a district court for the enforcement of the order, and provides a method of procedure.   Section 18 provides for rehearings and pleadings. Section 19 relates to matters of detail.   Section 20 gives the district courts jurisdiction, upon the application of the attorney general, to issue writs of mandamus, commanding common carriers to comply with the provisions of the act.   Section 21 provides for an appeal from any order of the commission to the district court, and from the district court to the supreme court.   The balance of the act relates to the furnishing of cars to shippers, accidents which result in death, repairs and increased facilities, all of which are to be controlled and regulated by order of the commission, and provides for penalties and damages with respect thereto.   The defendants in error contend that section 15 of the act, quoted above, gives the commission whatever authority it may have respecting rates, and that its power as to rates is confined to those that are discriminatory or preferential and not to those that are unreasonable.   It may be said in passing that the commission found that the rate charged from Walsenburg, in the southern coal fields, to Denver (a distance of 175 miles, largely on an upgrade), was $1.60 per ton, a rate less than one cent per ton per mile; and from Trinidad to Denver (a distance of 210 miles, largely on an upgrade), the rate is less than one cent per ton per mile; while from Louisville, in the northern dis-

trict (an average haul of 25 miles on a practically level grade), the rate was 80 cents per ton, or a little over three cents per ton per mile.   Here is a difference in the rate charged, which the commission, in its findings, substantially said was an unjust discrimination, and undue preference shown between different sections and shippers in the state.   The defendants in error admit that unjust discriminations and undue preferences to shippers can be corrected by order of the commission, and it can be said that the effect of the order made is to correct such a condition.   But if, however, as defendants in error contend, the order of the commission deals only with rates from the standpoint of reasonableness, it was nevertheless within the powers of the commission.

The defendants in error cite the case of *Interstate Commerce Commission v. Railway Co.,* 167 U. S. 479, and contend that that decision is controlling here.   That opinion was based upon the original Interstate Commerce Act of 1887, and, if the act of our general assembly was no stronger in this respect than that act, the case might be controlling.   It was held in that case that congress might itself prescribe the rates, or might commit to some subordinate tribunal that duty, or might leave it to the companies subject to regulations and restrictions.   It did not hold that the power to fix rates could not be implied from the language of an act.   It did hold that such power is not to be implied from any doubtful and uncertain language.   It held that, incorporating into a statute the obligation making all charges reasonable and just, and directing the commission to execute and enforce the provisions of the act did not of itself, by implication, carry to the commission the power of prescribing rates, and that such a power was not expressly granted and could not be implied from any language of the act.   This is far from saying that the power must be expressly given and that it never can be implied. From what is hereinafter said, we think that it clearly appears that our commission was given the power to regulate common carriers, and that this necessarily involves a regulation of

rates. Given the regulation of rates, the right to establish a maximum of charge as one of the means of regulation, is implied. *Munn v. The People,* 94 U. S. 113. Furthermore, as will be seen, our statute expressly authorizes the railroad commission to make an order with respect to unjust and unreasonable rates.

The commerce and business of the people of this state, and their prosperity, progress and equality in such commerce and business, are dependent in a very large degree upon the conduct and operations of the common carriers whose business it is to render carrier service to the public. The statute was intended to afford the public means whereby to remedy mischiefs that might arise in this public service. One of the greatest mischiefs that can arise is the charging of unjust and unreasonable rates. The act is essentially remedial, and being so should be liberally construed to the end that its objects and purposes may be accomplished; that is, "it is the business of the courts so to construe the act as to suppress the mischief and advance the remedy." *State v. F. N. & M. V. R. R. Co.,* 22 Neb. 313.

As shown by its title set out above, the objects and purposes of the act are broad and comprehensive in relation to common carriers. That title discloses that it was intended thereby to regulate common carriers in the state and to exercise a general supervision over their conduct and operation, and it must be taken that, by the act as framed and worded, the general assembly intended to accomplish the design thereof which it expressly stated in the title. As one of the agencies through which the avowed purposes of the act was to be accomplished, the general assembly created the state railroad commission, and in section 12 and elsewhere throughout the act clothed it with extensive authority, and, among other things, the commission was "authorized and required to execute and enforce the provisions of this act." Section 3 of the act provides that all charges for transportation of property shall be just and reasonable, and declares to be unlawful and

prohibits every unjust and unreasonable charge.   As seen in the *Interstate Commerce Commission* case, *supra,* the incorporation into the statute of the prohibition against unjust and unreasonable rates, and directing the commission to execute and enforce the provisions of the act does not of itself, by implication, carry to the commission the power to fix a maximum charge; but there is more than that in the present act from which that power must, we think, necessarily follow.

Section 13 provides that every person, etc., may complain, in a petition to the commission, of anything done, or omitted to be done by any common carrier, or in contravention of any of the provisions of the act, and that if the complaint is not satisfied upon notice, or if there shall appear to be any reasonable ground for investigating the complaint, it shall be the duty of the commission to investigate it.   The charging of an unjust and unreasonable rate is certainly in contravention of section 3 of the act and can be made the basis of a complaint for an investigation by the commission under section 13.   Section 14 of the interstate commerce act provided that whenever an investigation shall be made by the commission it shall be its duty to make a report in writing in respect thereto, which shall include the findings of fact upon which the conclusion of the commission are based, together with its recommendation as to what reparation, if any, should be made by the common carrier to any party or parties who may be found to have been injured, and such findings so made should be deemed *prima facie* evidence as to each and every fact found, and all reports of investigations should be furnished to the party who may have complained, and to the common carrier that may have been complained of.   It will be noticed that under that section all that the interstate commerce commission could do was to make a report which should contain its findings and recommendation.   Herein, section 14 of our act is essentially different from section 14 of the interstate commerce act under consideration in the 167 U. S.   Section 14 of our act provides that whenever investigation shall be made

by the railroad commission it shall be its duty to make a report which shall state the conclusion of the commission, together with its *decision, order or requirement* in the premises, and in case damages are awarded said report shall include the findings of fact on which the award is made.   Our act thus expressly says that the railroad commission may make a decision, order or requirement in case of an investigation of a complaint of anything done in contravention of the act, which includes a complaint of an unjust and unreasonable charge, while the interstate commerce commission could only make a finding and recommendation.   Now, if the commission may make a decision, order or requirement upon investigation of a camplaint of an unjust and unreasonable charge, in the discharge of its duty to execute and enforce the provisions of the act, it certainly may make such order or requirement as is necessary to carry out the purposes of the act. As one of the purposes of the act was to prevent unjust and unreasonable charges and to have the commission investigate such a complaint, the commission can certainly make a decision, order or requirement with reference thereto under the express provisions of section 14.   If it decides that the rate is unjust and unreasonable, it would necessarily, in the discharge of its duty, order or require the carrier to abstain from the prohibited charge, else its order or requirement would be a vain and useless thing.   When the general assembly said that the commission may make an order or requirement upon investigation of a complaint, it certainly included a complaint based on an unjust and unreasonable charge, for there is no language in the statute excluding such a complaint from being investigated and having an order or requirement made thereon.   Here is a mode of procedure to enable the commission to execute and enforce the provisions of the act that embraces a complaint and investigation of a reasonable charge, and certainly the general assembly did not exclude such complaint and investigation from the procedure provided by it, for there is no language in the act that would point to such

exclusion.   In making such an order or requirement the commission would necessarily have to prescribe what a just and
reasonable charge would be and order an abstention from the
excess.   This essential difference pointed out between the
present act and the old interstate commerce act alone removes
the applicability of that decision to the present act.   But there
are other essential differences between the acts that fortify us
in this conclusion.   Section 15 of the interstate commerce act
provides that if in any case in which an investigation shall be
made it appears to the commission that anything has been
done or omitted to be done in violation of the provisions of the act, or that any injury or damage has
been sustained by the party complaining, in consequence
of any such violation, it is the duty of the commission
to cause a copy of its report in writing thereon to be
delivered to such common carrier, together with a notice
that it desist from the violation within a reasonable time, and
if within the time specified it appears that the common carrier
had ceased from the violation and had made a reparation in
compliance with the report and notice of the commission, or
to the satisfaction of the party complaining, a statement to
that effect should be entered or recorded by the commission
and the common carrier would be relieved of further liability.
There is certainly very little power granted in that section.
Section 15 of our act, however, which is quoted in full above,
is much stronger.   The defendants in error seek to confine
that section to cases of unjust discrimination or undue preference, and not to the unreasonableness of charges.   But that
section itself expressly states that the commission may prescribe what regulation or practice in respect to transportation
is just, fair and reasonable to be thereafter followed.   It expressly deals with unreasonableness, and the construction of
the defendants in error, that it deals only with discrimination
or preferences, is entirely too narrow when the purposes of the
act and the very language of the section itself are kept in
view.   The charging of any rate for transportation is a regu-

lation with respect thereto.   The common law rule which requires the charge to be reasonable is itself a regulation as to price.   *Munn v. The People, supra.*   The prescribing of a reasonable rate to be thereafter followed is the prescribing of a regulation with respect to transportation to be thereafter followed.   And section 15 expressly says that the commission may do this and that the common carrier shall thereafter conform to the regulation so prescribed.

More applicable to the Colorado act is the opinion of the court in *State v. F. N. & M. V. R. R. Co.,* 22 Neb. 313.   In respect to this Nebraska case, the supreme court of the United States in the *Interstate Commission* case, 167 U. S., *supra,* said that though patterned largely after the interstate commission act is gave the Nebraska commission, called "a board of transportation," wider and more extensive powers than the federal act gave the interstate commerce commission, and thus distinguished the decision.   As has been seen, this distinction holds good for the Colorado act.   We can say no more, in confirmation of our conclusion that the order of the commission in the present case was within the powers granted it, than the Nebraska court said with reference to the act in that state.   The quotation reads in great measure as though directed to the Colorado statute when the objects and purposes of the latter act are kept in view.   Beginning on page 328, the Nebraska court said:

"Here is an act which declares that all charges *shall be just and reasonable,* prohibits and declares unlawful all unjust and unreasonable charges; which requires schedules of such just and reasonable charges to be posted for the use of the public, and prohibits an advance in rates except upon certain conditions; which prohibits any preference in favor of or against any person or place; which requires the board to investigate all complaints against any railway corporation doing business within the state, and gives such board power to call for persons and papers in order that their investigations may be thorough and the report thereof based upon facts, and also

makes their finding of fact *prima facie* evidence thereof, and requires said board to investigate and prevent any unjust discrimination against either any person, firm, corporation, or locality. These are broad powers. They are not to be restricted. Such powers were conferred for the express and declared purpose of fixing charges which shall be reasonable and just, and prohibiting unjust and unreasonable charges and unjust discrimination. The court has no authority to limit the board in any respect, in that regard. Such board is to determine, in the first instance, at least, what are reasonable and just charges, what unreasonable and unjust, and when any person, firm, corporation, or locality is unjustly discriminated against. There can be no restriction of the word 'locality;' it may refer to a village, city, county, or portion of the state, the meaning in each case to be determined by the territory which the board shall find to be unjustly discriminated against. If there is discrimination against any person, firm, or corporation, it is the duty of the board so to find, and to require the railway company to cease its discrimination. To do so such board has the authority to require such railway company to reduce its rates to a reasonable and just standard. The power to fix a reasonable and just rate is clearly conferred on the board, as also the power to determine what rates are unjust and unreasonable. It is the duty of the board to prevent unjust discrimination in all the forms mentioned in the statute, and to do so it may determine what is a proper charge to and from any points within the state, and its order in that regard based on its findings of facts will be *prima facie* evidence of the correctness of the order.

In the case under consideration the board found that the rates and charges of the respondent were excessive; in other words, that there was unjust discrimination against that part of the state, and having so found, the board is clothed with ample power to require such railway company to reduce its rates and charges. The power of the board, therefore to es-

tablish and regulate rates and charges upon railways within the state of Nebraska is full, ample, and complete." ..

From what has been said, it is apparent that the judgment of the district court was wrong and must be reversed, and it is so ordered and the cause remanded.

*Reversed and Remanded.*

Decision *en banc.*

CHIEF JUSTICE CAMPBELL not participating.

Decided May 6, A. D. 1912. Rehearing denied July 1, A. D. 1912.