PEOPLE EX REL. THOMAS v. GODDARD.

1. A demurrer admits the truth of all matters well pleaded.
2. The statute of 5 and 6 Edward 6, ch. 16, in so far as the same disqualifies a person from holding an office who has resorted to corrupt means to obtain it, is not in force in this state.
3. Under the constitution, so much of any act as is not directly germane to the subject expressed in the title is without force; the constitutional inhibition must, however, have a reasonable construction. It is enough if the bill treats of but one general subject, and that subject is expressed in the title.
4. Courts do not feel authorized to declare statutes unconstitutional unless the conflict between the law and the constitution is clear and unmistakable.

INFORMATION in the nature of a *quo warranto.*

Attorney-General T. H. THOMAS and Messrs. LUTHER S. DIXON and THORNTON H. THOMAS, for the people.

Messrs. CHAS. H. THOMAS, J. B. BISSELL, JOS. W. TAYLOR, CLINTON REED, WM. KELLOGG and CHAS. I. THOMSON, for respondent.

BECK, C. J. The information filed by the attorney-general charges that the respondent, while a candidate for the office of judge of the fifth judicial district, entered into seven corrupt contracts with as many different electors of said district, and that all of said contracts were made and entered into by the respondent for the purpose of securing his election to said office. It is charged that the respondent contracted separately with all these several individuals to the effect that, in the event

of his election, he would appoint each one of them to the office of clerk of the district court of Lake county, in said district, in consideration that each one of them should use all his influence and expend large sums of money in inducing and influencing electors to vote for him, and that, in pursuance of said contracts, said persons expended divers sums of money in influencing a large part of the electors of said judicial district to vote for the respondent for said office.

It is further charged that upon the making of said contracts, and each and every one of them, the respondent immediately became a disqualified and disabled person in law to have, occupy or enjoy said office.

The truth of these several. charges is admitted by the respondent's demurrer to the information.

It only remains for us, therefore, to determine whether the misconduct charged in procuring the office disqualified the respondent to hold and administer the same after his election.

It must be apparent to every citizen that if such disgraceful conduct as is alleged in this information does not *ipso facto* disqualify one from administering an office procured by the use of such means, the law is defective in this particular.

We desire in the first place to compliment the counsel engaged in the presentation of this case to the court for the able manner in which they discussed the several questions arising upon the demurrer. The arguments both on part of the people and the respondent displayed learning and research, and they very materially aided the court in its investigation of the subject.

We have made a careful examination of the various cases cited, so far as the books were accessible, and we are free to say that, but for the existence of a statute referred to in the oral argument, but not discussed in the briefs, the theory of the prosecution could and would be sustained. But, conceding that the statute of 5 and.

6 Edward VI., ch. 16, was adopted by the territorial leg-
islature in 1861, and that it was continued in force by
section 1 of the schedule to the state constitution, and
that the effect of the statute is to disqualify a person
from holding an office who has resorted to corrupt means
to obtain it, yet we are reluctantly forced to the conclu-
sion that the first state legislature repealed the statute so
far as the present case is concerned.

That body passed an act entitled "An act regulating
elections and repealing all territorial acts upon the sub-
ject." It was approved March 8, 1877. Section 4 of this
act provides as follows: "Every qualified elector shall
be eligible to hold any office for which he is an elector,
except as otherwise provided by the constitution."

The constitution enjoins upon the legislative assembly
the duty of passing laws to preserve the purity of the
ballot, but that instrument does not make the specific
misconduct charged in this information a disqualification
to hold office.

We have, then, an old English statute, which, if in
force as to the case presented, would authorize a judg-
ment of ouster upon the facts stated in the information;
but we have also a state statute, passed since the adop-
tion of the former, the effect of which is to declare the
respondent duly eligible, though guilty of the acts charged,
such acts constituting a misdemeanor only, which does
not disqualify him as an elector. We refer to section
1227 of the General Statutes, which operates to repeal
section 875 thereof in this particular.

Section 4 of the act of 1877 is irreconcilably inconsist-
ent with the English statute in the particular mentioned;
the consequence is that the later act must prevail. We
know of no rule of construction applicable to the case
which will avoid this result.

The general rule that a general statute does not repeal
a special or particular statute does not apply, for the rea-
son that the statute of Edward VI. cannot be said to be

either a special or a particular statute. Had it been of such a nature, it would never have been brought to the shores of this continent by the early colonists from England, nor would it, as a part of the common law, ever have become the rule of decision in any part of this country. It was only the public laws of the mother country and those of a general nature which found their way into the jurisprudence of this country. This point was made by the relator upon the argument, and authorities were cited to show that the statute of Edward VI. was regarded as a public law in England; that the judges, *ex officio*, took notice of it, and because it was a general law and not local or special, it, with other general laws of that country, became the rule of decision on this side of the Atlantic prior to its adoption by state conventions and prior to its enactment by state legislatures.

It was this characteristic that brought it within the adopting act of the Colorado legislature of 1861, which declared that the common law of England, so far as the same was applicable and of a general nature, and all acts of the British parliament made in aid of or to supply the defects of the common law prior to the fourth year of James the Ist. (with certain exceptions), and which were of a general nature and not local to that kingdom, should be the rule of decision here and should be considered of full force until repealed by legislative authority.

It is such an act as is clearly susceptible of repeal by implication. The inconsistency between its provisions and those of section 4 of the act regulating elections is patent, and if the latter section is valid it undoubtedly works a repeal of the English statute, so far as the facts of this case are concerned.

The only source of doubt as to the validity of the section in question is whether it is germane to the title of the act in which it appears. The question is a close one and not free from doubt.

Our constitution prohibits the passage of bills containing more than one subject, and makes void so much of any act as shall not be expressed in its title.' Const. art. V, sec. 21. Provisions of this character are usually inserted in constitutions, the object being, as was stated by the supreme court of Iowa, to prevent the union in the same act of incongruous matters and of objects having no connection or no relation. *State v. County Judge*, 2 Ia. 280.

But Mr. Cooley says the general purpose of these provisions is accomplished when a law has but one general object, which is fairly indicated by its title. Cooley's Const. Laws, p. *144. This learned author further says, in the same connection: "To require every end and means necessary or convenient for the accomplishment of this general object to be provided for by a separate act relating to that alone, would not only be unreasonable, but would actually render legislation impossible."

Courts and law writers have said that the generality of the title of a bill is no objection to it, and that it is not required that the body of a bill shall be a repetition of its title.

The lamented Thatcher, when chief justice of this court, in commenting upon the constitutional provision referred to, used the following language, which has since been accepted as the true interpretation of the provision: "That under our constitution so much of any act as is not directly germane to the subject expressed in the title is without force; that the provision, instead of being only a rule of the general assembly to regulate their procedure, is a mandatory declaration of an essential condition to the validity of legislative enactments." *C. & G. R. Co. v. The People*, 5 Colo. 40.

If subjects diverse in their natures, having no necessary connection with each other, be joined together in a bill, or subjects be inserted of which the title gives no

intimation, it is an imposition upon the legislature, and the public as well, and constitutes the very evil against which the constitution sought to guard.

But, as we said in *Golden Canal Company v. Bright* (*ante*, p. 144), "this constitutional inhibition must have a reasonable construction. It is enough if the bill treats of but one general subject, and that subject is expressed in the title. To require that each subdivision of the subject, ' each and every of the ends and means necessary and convenient for the accomplishment of the object,' must be specifically mentioned in the title, would greatly impede and embarrass legislation."

The act in question relates to the general subject of elections, and to say that the qualifications of those to be elected, as well as the qualifications of the electors, are not germane to the subject might produce disastrous consequences. If such a ruling should be made, it might serve as a precedent for annulling the act in other essential particulars, certainly not more germane to the title than this one. The act has been in force for eight years, and valuable rights have accrued under it. To declare an act of the legislature unconstitutional is always a delicate duty, and one which courts do not feel authorized to perform unless the conflict between the law and the constitution is clear and unmistakable. We are not prepared to say that the qualification for elective offices is so foreign to the title of the act of March 8, 1877, or so foreign to the ostensible purpose of that statute, as to make it obnoxious to the constitutional provisions referred to.

It must be admitted that the insertion of this rule of qualification was unfortunate, and that the provisions of the statutes of Edward VI. are much more salutary upon this point, and ought to receive legislative recognition. The demurrer will be sustained.

*Demurrer sustained.*