## No. 14,787.

DENVER LOCAL UNION NO. 13 OF THE INTERNATIONAL
BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, STABLE-
MEN AND HELPERS OF AMERICA ET AL. *v.* BUCKINGHAM
TRANSPORTATION COMPANY ET AL.

(118 P. [2d] 1088)

Decided October 27, 1941.

Mr. PHILIP HORNBEIN, Mr. PHILIP HORNBEIN, JR., Mr.
THEODORE EPSTEIN, for plaintiffs in error.

Mr. KENAZ HUFFMAN, Mr. HORACE F. PHELPS, Mr. FRANK J. TRELEASE, JR., for defendants in error.

*En Banc.*

MR. JUSTICE KNOUS delivered the opinion of the court.

THIS suit was instituted in the district court by the Buckingham Transportation Company and a number of its employees, defendants in error here, to obtain an injunction restraining plaintiff in error union and certain of its representatives from picketing the place of business of the Buckingham company. To review a judgment granting the injunction as prayed the union prosecutes this proceeding in error.

Inter alia, the union contends: (1) That the court erred in adjudging there was no labor dispute, and in holding that the statute (chapter 59, S.L. 1933, '35 C.S.A., c. 97, §§76 to 87 inclusive, to which reference is commonly made as the State Norris-La Guardia Act) prohibiting the granting of injunctions against the peaceful communication of information in such case, was not applicable in the situation here presented. (2) That the judgment of the court was erroneous in that the plaintiffs in error were enjoined from exercising the right of free speech and free communication in the furtherance of their economic and social interests as constitutionally guaranteed them.

The Buckingham company is an interstate carrier by truck operating from Denver, where its principal office is located, into portions of Wyoming, Nebraska and South Dakota. The company was under no contractual relation with any labor union to employ union members or to adhere to the union schedule of wages or conditions of operation. Although its truck drivers and possibly other of its employees were eligible for membership in the defendant union, a craft organization, few of them belonged and apparently none were dissatisfied with the

terms and conditions of their employment. For several months previous to the filing of this suit the union had been engaged in a generally unsuccessful effort to unionize a group of interstate carriers by truck operating in and out of Denver and their employees. Several, if not all, of these carriers, including the Buckingham company, were members of an organization known as the Motor Truck Common Carriers Association. One of the functions of this association was to represent its members, upon their request, in negotiations concerning labor controversies. It is readily apparent from the record that the principal object of the association in this field was to preserve an open shop status for its members. Earl F. Buckingham, the president and general manager of the Buckingham company, was a director in the association and active in its affairs. The position of the Buckingham company as an employer, as viewed by the trial court and expressed in the findings was that, "So far as the Buckingham Transportation Company is concerned, it has done nothing to cause any difficulty with the defendants, except to refuse to contract with the union unless the men desire to join the union, or to refuse to take any part in the proposition of whether or not the men join the union." By reason of his connection with the carriers' association and his attitude as an employer toward the union's program of unionization, the latter, rightly or wrongly, conceived that Buckingham's opposition was one of the major obstacles in the path of their objectives. There was conflict in the evidence as to whether or not a union contract ever was presented to the Buckingham company for formal execution or rejection. Certain statements in the findings would suggest that the trial judge was of the view that no such presentation had been made, but other of his remarks, as is evidenced by the excerpt from the findings hereinabove quoted, would indicate that he entertained the belief that Buckingham had refused to contract. In any event, from all the evidence it seems

to us the inference is impelling that had such formality been attempted, a refusal to contract would have followed forthwith and such uncertainty on the subject as exists in the findings may be accounted for by the circumstances that the trial court, as will appear, disposed of the case upon a basically different ground.

With the relations of the parties in this temper, a Buckingham truck, loaded with wool consigned to an auction company in Denver, was driven through a picket line established by another union at the auction company's wool warehouse where the picket line was maintained in connection with a strike by the auction firm's employees. A day or so thereafter, Denver Local Union No. 13, plaintiff in error in the case at bar, began picketing the place of business of the Buckingham company. For a few hours during the first day the picketing was conducted by two men and thereafter by one only. The pickets carried placards bearing the inscription: "Buckingham Unfair To Teamsters Local Union No. 13" and: "This Firm Unfair to Teamsters Local Union No. 13." No violence whatsoever, or any threat thereof, was offered by the pickets, nor was the picketing accompanied by any contemporaneously violent conduct of the union members.

The trial judge, as a matter of law, entertained the view that under the statute there could be no labor dispute between an employer and a union unless the employer's own employees were in controversy with him. As indicative of such view we quote the following from his findings: "I think the statute itself pretty well indicates that a labor dispute must be something growing out of conditions existing within the employment as between the employer and the employee. The last section of the statute [§87] rather summarizes all of the rest of the sections. It says, 'The term labor dispute includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons negotiating, fixing, maintaining, changing or

seeking to arrange terms or conditions of employment, or concerning employment relations, or any other controversy arising out of the respective interests of the employer and employee . . . . . .' The question is whether or not it is between the employer and the employee, and it has reference to conditions existing between the employer and the employee. The dispute must be as to working conditions, wages, hours, between the employer and the employee. That is the opinion of the court." On this premise, it being unquestioned factually that Buckingham's own employees were in no contest with their employer, the trial court resolved the basic issue raised by the original pleadings in favor of Buckingham and determined that since there thus was no labor dispute within the purview of the statute, no legislative restraint inhibited the issuance of the injunction.

Having thus disposed of the major question the court then expressed the opinion that no statutory labor dispute was precipitated by the passage of the Buckingham truck through the picket line of the other union. Counsel for Buckingham in their presentation here insist that the last mentioned circumstance was the sole primary cause of the picketing activities of which complaint is made and assert that the trial court so found. We are unable to agree that such was the finding, but even if it was, we believe the conception was manifestly against the weight of the evidence. In our opinion this transaction — which first was brought into the proceeding during the course of the trial by the hearsay statement of one of Buckingham's principal witnesses, and afterward was embodied in the pleadings by amendment to the complaint—was but casually incidental to the actual cause of the controversy. If such was not so, it is difficult to understand why, in addition to Buckingham's alleged grievances, the occurrence was not mentioned in the complaint in the first instance, especially in view of the fact that the evidence thereof seems to have been so readily available to Buckingham. Rather, we think,

the original pleading bespoke the real complaint and that, in accord with his view, the trial judge in logical sequence, first sustained Buckingham's major contention and then held the minor incident presented no additional legal basis for not enjoining the picketing.

██ When the district court was called upon to decide this case the authorities generally were in an unsettled state as to the basic question involved, and no decision of this court on that subject had been promulgated. That state of uncertainty has been dissipated by recent decisions of the United States Supreme Court, as well as our own. We recently held, in *Denver Union v. Perry Truck Lines,* 106 Colo. 25, 101 P. (2d) 436, that under the State Norris-La Guardia Act, a labor dispute as therein defined might exist between an employer and a labor union even though there was no controversy between such employer and his own employees. Also, in that case — presaging the holding of the Supreme Court of the United States in *Thornhill v. Alabama,* 310 U.S. 88, 60 Sup. Ct. 736, 84 L. Ed. 1093—we held that peaceful picketing had its basic roots in the constitutional guaranties of liberty and freedom of speech. Under these decisions and others of the United States Supreme Court hereinafter cited, there is now no question that a state may not by its common-law or statutory policy prohibit peaceful persuasion, through peaceful picketing, notwithstanding the occasioning labor dispute is not an immediate employer-employee one.

██ Concerning this doctrine it is said in the opinion in *American Federation of Labor v. Swing,* 312 U.S. 321, 61 Sup. Ct. 568, 85 L. Ed. 513:

"All that we have before us, then, is an instance of 'peaceful persuasion' disentangled from violence and free from 'picketing *en masse* or otherwise conducted' so as to occasion 'imminent and aggravated danger.' *Thornhill v. Alabama,* 310 U.S. 88, 105. We are asked to sustain a decree which for purposes of this case asserts as the common law of a state that there can be

no 'peaceful picketing or peaceful persuasion' in relation to any dispute between an employer and a trade union unless the employer's own employees are in controversy with him.

"Such a ban of free communication is inconsistent with the guarantee of freedom of speech. That a state has ample power to regulate the local problem thrown up by modern industry and to preserve the peace is axiomatic. But not even these essential powers are unfettered by the requirements of the Bill of Rights. The scope of the Fourteenth Amendment is not confined by the notion of a particular state regarding the wise limits of an injunction in an industrial dispute, whether those limits be defined by statute or by the judicial organ of the state. A state cannot exclude workingmen from peacefully exercising the right of free communication by drawing the circle of economic competition between employers and workers so small as to contain only an employer and those directly employed by him. The interdependence of economic interest of all engaged in the same industry has become a commonplace. *American Foundries v. Tri-City Council,* 257 U.S. 184, 209. The right of free communication cannot therefore be mutilated by denying it to workers, in a dispute with an employer, even though they are not in his employ. Communication by such employees of the facts of a dispute, deemed by them to be relevant to their interests, can no more be barred because of concern for the economic interests against which they are seeking to enlist public opinion than could the utterance protected in Thornhill's case. 'Members of a union might, without special statutory authorization by a State, make known the facts of a labor dispute, for freedom of speech is guaranteed by the Federal Constitution.' *Senn v. Tile Layers Union,* 301 U.S. 468, 478." See, also, *Milk Wagon Drivers Local v. Lake Valley Farm Products, Inc.,* 311 U.S. 91, 61 Sup. Ct. 122, 85 L. Ed. 91; *Culinary Workers Local v. Busy Bee Cafe* (Ariz.), 115 P. (2d) 246. It should be added

that notwithstanding these fundamental guaranties, it recently has been held by the United States Supreme Court that when the picketing is not peaceful or where, while peaceful in itself, it is set against a background of acts of violence, injunctive relief may be granted constitutionally. *Milk Wagon Drivers Union v. Meadowmoor Dairies,* 312 U.S. 287, 61 Sup. Ct. 552, 85 L. Ed. 497, 132 A.L.R. 1200. In the opinion therein the line of demarcation between the permissible and prohibited categories is drawn in the following language: "No one will doubt that Illinois can protect its storekeepers from being coerced by fear of window smashings or burnings or bombings. And acts which in isolation are peaceful may be part of a coercive thrust when entangled with acts of violence. The picketing in this case was set in a background of violence. In such a setting it could justifiably be concluded that the momentum of fear generated by past violence would survive even though future picketing might be wholly peaceful. * * * Freedom of speech and freedom of the press cannot be too often invoked as basic to our scheme of society. But these liberties will not be advanced or even maintained by denying to the states with all their resources, including the instrumentality of their courts, the power to deal with coercion due to extensive violence."

Since it appears that the discord here shown amounted to a non-enjoinable statutory labor dispute under the doctrine announced in *Denver Union v. Perry Truck Lines, supra,* and as well that the peaceful picketing involved came within the area of free discussion guaranteed by the Constitution, rather than within the inhibited classification fixed by the Meadowmoor decision, the injunction cannot be sustained.

We might add that expressions of the trial court to the effect that the picketing under consideration constituted a secondary boycott, are negatived by our pronouncements on this topic in *Denver Union v. Perry Truck Lines, supra,* and by the further circumstance

that here all the parties were interested in the business of trucking, the industry in which the dispute occurred, thus bringing the controversy legitimately within the scope of section 87(b) of the State Norris-La Guardia Act as a labor dispute and nothing more. See, *Milk Wagon Drivers Union v. Lake Valley Farm Products, Inc., supra.*

The judgment is reversed.

MR. CHIEF JUSTICE FRANCIS E. BOUCK and MR. JUSTICE BURKE not participating.