No. 15,446.

AMERICAN FEDERATION OF LABOR ET AL. V. REILLY ET AL.
(155 P. [2d] 145)

Decided December 21, 1944. Rehearing denied January 8, 1945.

92

Mr. Philip Hornbein, Mr. Joseph A. Padway, Mr. Lee
Pressman, Mr. Charles Mahoney, Mr. Wayne C. Wil-
liams, Mr. Theodore Epstein, Mr. Herbert S. Thatcher,
Mr. Eugene Cotton, Mr. Maurice Sugar, Mr. Ernest

Goodman, Mr. Harry N. Routzohn, for plaintiffs in error.

Mr. Gail L. Ireland, Attorney General, Mr. H. Lawrence Hinkley, Deputy, Mr. St. George Gordon, Assistant, Mr. R. Hickman Walker, Special Assistant, Mr. Harry S. Silverstein, of counsel, for defendants in error.

Mr. Carl Whitehead, Mr. Arthur Garfield Hays, Mr. Osmond K. Frankel, Mr. Nathan Greene, Mr. Samuel J. Silverman, Mr. Clifford Forster, for American Civil Liberties Union, amicus curiae.

*En Banc.*

Mr. Justice Knous delivered the opinion of the court.

This action was initiated under the declaratory judgment statute, article X, chapter 93, '35 C.S.A. (Rule 57 R.C.P. Colo.), by a group of labor organizations, their officers and individual members, plaintiffs in error here, hereinafter to be called the plaintiffs, against the members of the Industrial Commission of Colorado and Attorney General of Colorado, to whom we shall refer as the defendants, to test the constitutionality of the Labor Peace Act of Colorado, chapter 131, Session Laws of 1943 (subdivision 2a, chapter 97, 1943 Cum. Supp. to '35 C.S.A.).

This cause was assigned to the writer on November 30, 1944.

The attack was upon the act as a whole and upon several of its separate sections and subsections, specifically sections 20 and 21 in their entirety, and sections 6 (1) (c), 6 (2) (e), 6 (2) (g), 6 (2) (l), 7 (2), 8 (15) and 11 (2). In the district court the ruling was that sections 20 and 21 were unconstitutional, but that otherwise neither the act generally, nor the individual provisions

assailed, offended either the federal or state Constitutions. Here plaintiffs seek a review of the latter phase of the judgment below, while defendants have interposed cross-specifications of points to the adjudication of the invalidity of sections 20 and 21.

We shall first consider the questions raised by defendants' cross-specifications of points.

Section 20 (1) of the act provides, inter alia: "Each collective bargaining unit local labor union and company union now existing in this state is hereby required to incorporate within ninety days from the passage of this act, and any group hereafter organized is hereby required to incorporate before operating as such * * *." Further, and by subsections (2) and (3) (a) and (b) and (4) (a) to (f) inclusive, section 20 sets out the manner in which such corporations shall be formed and function and explicitly imposes specific regulations for the internal management and affairs of such bodies. Section 21 reads as follows:

"(1) No collective bargaining unit or local labor union or group of employees shall enjoy the privileges recognized by this act unless they incorporate as herein provided. No persons required by this act to be incorporated shall carry on any of the activities purported to be regulated by this act, without incorporation hereunder.

"(2) Any violation of this section shall be a misdemeanor and punishable by fine of $300.00 for each offense, and each member of any group guilty of such violation shall be separately guilty of a misdemeanor and subject to a fine of $300.00."

Summarizing the pleadings, evidence and arguments in a well considered opinion, which is reported at length as *American Federation of Labor v. Reilly,* 7 Labor Cases No. 61-761, the trial court, with reference to the points in consideration, inter alia, expressed:

"As to sections 20 and 21 of the Labor Peace Act, plaintiffs raise in their argument and in their briefs as their major point that the Colorado statute by virtue of

its previous general restraint requiring incorporation of all labor unions operating in the State of Colorado, constitutes an unconditional denial of the right of free speech, press and assembly to labor organizations and their members and otherwise deprives labor organizations and their members of liberty and civil rights, in violation of the Due Process Cluase of the Fourteenth Amendment of the Constitution of the United States, considered in conjunction with the First Amendment of said Constitution of the United States, and likewise violates, for the same reasons, Article II, Section 10 and Section 24 of the Constitution of the State of Colorado, covering the same subject-matter. * * *.

"And plaintiffs cite numerous cases in support of this contention, among which are Thornhill v. Alabama, 310 U. S. 88; NLRB vs. Jones & Laughlin Steel Corporation, 301 U. S. 1; United States vs. Cruikshank, 92 U. S. 542; American Steel Foundries vs. Tri-State Central Trades Council, 257 U. S. 184; International Textbook Company vs. Pigg, 217 U. S., 91, and Lovell vs. City of Griffin, 303 U. S. 44.

"It is contended that the Supreme Court of the United States has regularly frowned on any efforts to impose burdens of this type, however nominal in appearance, upon the exercise of the basic rights guaranteed in the Bill of Rights, citing Schneider vs. New Jersey, 308 U. S. 147; Murdock vs. Pennsylvania, 73 S. Ct. 870; Grosjean vs. American Press Company, 297 U. S. 233, and West Virginia vs. Barnette, as well as the cases above cited.

"The Court has carefully considered all of these cases and the statements of the learned judges therein, and has carefully considered the arguments and citations of authorities and briefs of the defendants, and has come to the conclusion beyond a reasonable doubt that these arguments and authorities have not been met or overcome by the defendants herein, and that section 20 (and all the provisions and sub-sections thereof) and section

21, are unconstitutional and inoperative and unenforceable for the reason that the same do require the prerequisite of incorporation for labor unions which, under its wording and provisions, does operate as a complete general previous restraint upon the exercise of the rights of free speech, free press and assembly, thus violating, in the opinion of the Court, the Due Process Clause of the Fourteenth Amendment of the Federal Constitution considered in conjunction with the First Amendment, and the Court so declares and finds."

Upon this rationale, concerning which we shall comment briefly, we are of the opinion that the conclusions of the trial court were sound and that its judgment as to the points in consideration must be affirmed.

█ The Supreme Court of the United States is the final arbiter in the field of federal constitutional law and its decisions as to the meaning and scope of a constitutional provision bind state judges. *American Federation of Labor v. Bain,* 165 Ore. 183, 106 P. (2d) 544, 130 A.L.R. 1278. In reaching its decision on the points now in consideration the trial court properly relied upon the pronouncements of the highest tribunal in our nation, which we think sustain the conclusion reached.

██ By these decisions the United States Supreme Court in *Thornhill v. Alabama,* 310 U. S. 88, 60 Sup. Ct. 736, 84 L. Ed. 1093, and *Carlson v. California,* 310 U. S. 106, 60 Sup. Ct. 746, 84 L. Ed. 1104, it is now established beyond question, as counsel for defendants in effect concede, that picketing as an incident to a labor dispute is, at least in some of its phases, an exercise of the right of freedom of speech. In accord with those principles are our decisions in *People v. Harris,* 104 Colo. 386, 91 P. (2d) 989, 122 A.L.R. 1034; *Denver Union v. Truck Lines,* 106 Colo. 25, 101 P. (2d) 436, and *Denver Union v. Buckingham,* 108 Colo. 419, 118 P. (2d) 1088. See, also, 31 Am. Jur., p. 947, §229. Correlatively, as the Thornhill, Carlson and Harris cases, supra, emphasize, state legislation involving only reasonable regulation

rather than an absolute prohibition of peaceful picketing, would not be unconstitutional. In this connection, see particularly *Milk Wagon Drivers Union v. Meadowmoor Dairies,* 312 U. S. 287, 61 Sup. Ct. 552, 85 L. Ed. 836, 132 A.L.R. 1200; *Hotel & Restaurant Employees' Alliance v. Wisconsin Employment Relations Board,* 315 U. S. 437, 62 Sup. Ct. 706, 86 L. Ed. 946; *American Federation of Labor v. Swing,* 312 U. S. 321, 61 Sup. Ct. 568, 85 L. Ed. 855; *Allen-Bradley Local v. Wisconsin Board,* 315 U. S. 740, 62 Sup. Ct. 820, 86 L. Ed. 1154, and *Carpenters & Joiners Union v. Ritter's Cafe,* 315 U. S. 722, 62 Sup. Ct. 807, 86 L. Ed. 1143.

█ The courts of the United States for many years, and generally without regard to statute, have recognized the right of workmen to organize in labor or trade unions for the purpose of promoting their common welfare by lawful means. See, *American Steel Foundries v. Tri-City Central Trades Council,* 257 U. S. 184, 42 Sup. Ct. 72, 66 L. Ed. 189, 27 A.L.R. 360. This right has been declared to be a "fundamental" one (*National Labor Relations Board v. Jones & Laughlin Steel Corp.,* 301 U. S. 1, 57 Sup. Ct. 615, 81 L. Ed. 893, 108 A.L.R. 1352; *Texas & N. O. R. R. Co. v. Brotherhood,* 281 U. S. 548, 50 Sup. Ct. 427, 74 L. Ed. 1034), existing independently, and prior to the authorization for formation of the National Labor Relations Board. (*Amalgamated Utility Workers v. Consolidated Edison Co.,* 309 U. S. 261, 60 Sup. Ct. 561, 84 L. Ed. 738). See, also, 31 Am. Jur., p. 851, §32; *National Labor Relations Board v. Jones, supra; Iron Molders' Union v. Allis-Chalmers Co.* (CCA 7th), 166 Fed. 45, 20 L.R.A. (N.S.) 315. See, also, *Pickett v. Walsh,* 192 Mass. 572, 78 N.E. 753, 6 L.R.A. (N.S.) 1067, 116 Am. St. Rep. 272, 7 Ann. Cas. 638. Mr. Justice Stone (now Chief Justice), in his opinion in *Hague v. C.I.O.,* 307 U. S. 496, 59 Sup. Ct. 954, 83 L. Ed. 1423, expressed that the guarantees of free speech and assembly under the First Amendment extended protection against attempts of the authorities under a Jersey City ordinance

to prevent the labor organizations involved "from holding meetings and disseminating information whether for the organization of labor unions or for any other lawful purpose." The specific purposes of such meetings, according to the opinion of Justice Stone, were "to organize labor unions in various industries in order to secure to workers the benefits of collective bargaining with respect to betterment of wages, hours of work and other terms and conditions of employment." An injunction against the city officials was sustained under the First Amendment, and the rights of the unions were protected against infringement by the state under the Fourteenth Amendment.

Notwithstanding the contrary contention of counsel for defendants, we think the decisions indicate that the constitutional guarantee of assembly to the people is not restricted to the literal right of meeting together "to petition the government for a redress of grievances." See, *Hague v. C. I. O., supra; DeJonge v. Oregon,* 299 U. S. 353, 57 Sup. Ct. 255, 81 L. Ed. 278; *Herndon v. Lowry,* 301 U. S. 242, 57 Sup. Ct. 732, 81 L. Ed. 1068; *Murdock v. Pennsylvania,* 319 U. S. 105, 63 Sup. Ct. 870, 87 L. Ed. 1292, and *State v. Butterworth,* 104 N. J. L. 579, 142 Atl. 57.

While these decisions may not as unequivocally place the right of workmen to organize and operate as a voluntary labor association within the area of the guarantees of assembly and free speech as the Thornhill case locates peaceful picketing within the perimeter of the latter, their purport seems to us to support the conclusion of the trial court that sections 20 and 21 transgressed constitutionally by denying to unincorporated labor unions, and their individual members any right to assemble and function as such in the promotion of their common welfare by lawful means. The recognition of the constitutional right to so do, of course, in no way precludes a state within the limits of its inherent police power, from regulating the activities and

conduct of labor unions, incorporated or unincorporated, in the interest of public welfare. The portions of the Colorado act now in consideration patently reach beyond the limits of such permissible regulation.

As may be recalled from the quotation above, section 21 provides, that no union shall enjoy the privileges recognized by the enactment, which covers the entire field of labor relations, unless it is incorporated and that, "No persons required by this act to be incorporated shall carry on any of the activities purported to be regulated by this act, without incorporation hereunder." Violators of the provisions of the act may be prosecuted and offenders punished by the imposition of fines.

▉ Thus, a fundamental change in the bodily form of lawful voluntary association of individual workmen into labor unions is made a prerequisite to the exercise of the right to picket and to assemble within the areas of constitutional protection delineated by the foregoing decisions of the United States Supreme Court. The imposition by limiting the enjoyment of such rights to corporations alone denies such to all others. The distinction we note seems to be clearly set out in the language of the opinion in *DeJonge v. Oregon, supra,* wherein it is said: "These rights may be abused by using speech or press or assembly in order to incite to violence and crime. The people through their legislatures may protect themselves against that abuse. But the legislative intervention can find constitutional justification only by dealing with the abuse. The rights themselves must not be curtailed."

The extent to which the state, under its police power, may operate in regulating the exercise of the personal liberties guaranteed by the First and Fourteenth Amendments is fully discussed in our opinions in the cases of *Hamilton v. Montrose,* 109 Colo. 228, 124 P. (2d) 757, and *McCormick v. Montrose,* 105 Colo. 493, 99 P. (2d) 969.

In recent years several other states, notably Minne-

sota (chapter 440, S. L. 1939; chapter 469, S. L. 1941, and chapter 625 S. L. 1943); Michigan (Pub. Acts 1939, p. 336); Florida (S. L. 1943); Texas (chapter 104 Gen. & Spec. Laws 1943); Idaho (chapter 76, S. L. 1943); South Dakota (chapter 86 S. L. 1943); Wisconsin (chapter 57, Laws of 1939); Kansas (chapter 191, S. L. 1943), and Alabama (chapter 298, Gen. Acts, Sess. 1943), have passed laws designed to comprehensively cover labor relations between employers and employees in such commonwealths. Although the common trend of these statutes is to impose regulations, including in some instances the requirement of registration, upon unions, as well as their representatives, and to place restrictions and limitations upon striking, picketing, boycotting and associated labor activities, not one of the enactments, save those of Colorado, require the incorporation of a union as a prerequisite to its operation as such. Statutes requiring registration in some form have been upheld in *Alabama State Federation of Labor v. McAdory* (Ala), 18 So. (2d) 810; *Ex parte Thomas,* 141 Tex. 591, 174 S.W. (2d) 958, and *Hill v. State ex rel.,* decided November 28, 1944, (Fla.), 19 So. (2d) 857. In the light of the conclusions we have expressed, it is unnecessary that we consider or pass upon other objections advanced by plaintiffs to the validity of section 20, supra.

We are satisfied also that the trial court was right in holding that since the compulsory incorporation requirement contained in section 20 is unconstitutional, the entire section, including the regulatory provisions of its various paragraphs and subsections must fall, for the reason that all of the latter are so inseparably intertwined with and predicated upon the invalid incorporation feature as to be unable to stand without it. In such a situation the severability clause (section 19) does not operate to save the collapse of interdependent and connected parts of the structure. *People v. Morgan,* 79 Colo. 504, 246 Pac. 1024. Neither do the words in sec-

tion 24: "Nor shall anything in this act be so construed as unlawfully to invade the right to freedom of speech," pertinent as they may be to the application of such regulatory provisions of the act as are not predicated upon the prerequisite of compulsory incorporation, salvage those which were enacted upon the assumption of the imposed corporate form now found to be unconstitutional.

We further believe that section 6 (2) (e) and the concluding sentence of section 7 (2), which are of the group challenged by plaintiffs, are so inseparably connected in substance with invalidated section 20, as to make them inoperative upon the basis last above discussed and that the judgment must be extended to so declare. This for the following reasons. The portion of section 7 (2) in controversy provides that: "No strike shall be lawful unless it is authorized by a majority vote of the employees of the union involved *taken by secret ballot such as is provided in this act."* Section 6 (2) (e) makes a majority vote "by secret ballot to call a strike" a condition precedent to the lawful exercise of certain concomitants of a strike. The *only* provision in the act for the mechanics of taking a strike vote, and this by corporate action, is contained in presently inoperative section 20 (4) (b). Likewise, the standard of eligibility for members to vote on matters of corporate business, including strikes, is prescribed in section 20 (1) (a) which fell with the compulsory incorporation feature therein contained. Thus, with section 20 out, the act provides *no* method for taking a strike vote by secret ballot or otherwise. As appears from the record, the voting qualifications and procedure fixed by the legislature in unconstitutional section 20 are at variance with those fixed by union constitutions and by-laws.

These provisions make it certain that the legislature deliberately and expressly so intertwined the procedure for the strike vote contemplated in sections 7 (2) and 6 (2) (e) with the presently ineffective cor-

porate processes set up in section 20, as to require the former to perish with the failure of the latter. To fill this vacuum would require rewriting the act, which no court properly may do.

Having denied the soundness of defendants' cross-specification of points directed to the action of the trial court in declaring sections 20 and 21 unconstitutional, we now pass to a consideration of the objections of plaintiffs to the balance of the declarations made.

Initially, it is said the trial court erred in rejecting the claim of plaintiffs that the act as a whole is unconstitutional upon the theory that, as to employees engaged in interstate commerce, it infringes upon the field pre-empted by the National Labor Relations Act, 29 U. S. C. A., chapter 7, §§151-166, and upon the further ground that if such field is not pre-empted by the federal act, the Colorado law is in direct and fatal conflict with the federal legislation and so should be declared invalid. In our opinion, as was the view of the trial court, both these questions have been answered adversely to the contention of plaintiffs by the decision of the United States Supreme Court in *Allen-Bradley Local v. Wisconsin Employment Relations Board,* 315 U. S. 740, 62 Sup. Ct. 820, 86 L. Ed. 1154, affirming the decision of the Wisconsin Supreme Court reported in 237 Wis. 164, 295 N.W. 791. Therein the company involved admittedly was engaged in interstate commerce and subject to the National Labor Relations Act. The union was composed of the employees of the company. When the order in concern, which forbade mass picketing, threats and violence was issued by the Wisconsin board, under the provisions of the Wisconsin Employment Peace Act, upon which the Colorado law (excepting sections 20 and 21) was modeled, the federal board had not undertaken to exercise the jurisdiction the federal act conferred upon it. The union representatives claimed, in the language of the opinion "that the state act, viewed as a whole, so undermines rights protected

and granted by the federal act and is so hostile to the policy of the federal act that it should not be allowed to survive." This position, as appears from the synopses of the briefs (86 L. Ed. 1155, et seq.), some of which were from counsel in the case at bar, was supported by substantially the same arguments and citations made here. The Supreme Court rejected this contention upon the basis that it would not deal with theoretical disputes nor settle constitutional questions abstractly, but only "as they are appropriately raised upon a record" before it. Consistently, it then proceeded to a decision on the single issue of whether the order was unconstitutional as being repugnant to the federal act, and in so moving expressed that the control which Congress, under the commerce clause, had asserted over the subject matter of labor disputes is passing the National Labor Relations Act, was not so pervasive or exclusive as to prevent Wisconsin, in the exercise of its police power, from enacting legislation regulating the type of employee or union activity involved in the challenged order, which was upheld. In other words, as we understand, the court held, not only that the National Labor Relations Act did not pre-empt the field of regulation of labor disputes, but also that Congress had "designedly left open an area for state control," and that conflicts between federal and state enactments, or orders arising therefrom, within that area should be resolved only upon "concrete and specific issues raised by actual cases." In this view the authority clearly supports the declaration of the trial court on this subject, which we affirm. Other cases so holding are, *Alabama State Federation of Labor v. McAdory, supra,* 18 So. (2d) 816; *Fansteel Corporation v. Lodge 66, Amalgamated Iron, Steel & Tin Workers,* 295 Ill. App. 323, 14 N.E. (2d) 991, and *Wisconsin Labor Relations Board v. Fred Rueping Leather Co.,* 228 Wis. 473, 279 N.W. 673, 117 A.L.R. 398. See, also, *Milk Drivers' Union v. Meadowmoor Dairies, supra.* For an occasion in Wisconsin in which the federal act

was given controlling effect in a specific controversy, see *Wisconsin E. R. Board v. International Ass'n,* 241 Wis. 286, 6 N.W. (2d) 339.

This leaves for our consideration the trial court's ruling on sections 6 (1) (c), 6 (2) (g), 6 (2) (l), 8 (15) and 11 (2), which makes picketing, boycotting, striking and other existing union activities, under certain circumstances, unfair labor practices. The plaintiffs contend that the restrictions proposed constitute a denial to labor organizations and their members of the rights of free speech, assembly and to contract, and otherwise deprive them of rights protected under the Fourteenth Amendment to the federal Constitution, and constitute an attempt to impose involuntary servitude in violation of the Thirteenth Amendment, and that the trial court so erred in declaring them valid. As appears from its opinion, the trial court recognized "that many of the questions here passed on by the court in regard to the various separable provisions of the Colorado Peace Act (in which category the subsections last cited above must be placed) may approach very closely to an advisory status, and the anticipatory conditions have not yet arisen and do not arise on the face of the statute itself," and thus might not be within the purview of our Uniform Declaratory Judgments Act. Notwithstanding, in the performance of what is considered its responsibility to further a final disposition of the issues, the court proceeded to their complete adjudication.

We are convinced, for the reasons which follow, that instead of so acting, the court, in accord with its initial view above quoted, should have declined to pronounce declaratorily on the phase of the case in discussion.

Under our Uniform Declaratory Judgments Act, where results to occur from the enforcement of a statutory provision can be predicted with certainty, as in the situation with respect to sections 20 and 21 and interrelated subdivisions, or where the basic right of the state to enter legislative fields said to be the domain of

the Federal Government is questioned, as here is done by the contention relating to the National Labor Relations Act, a court properly may declare with respect to the validity of a statute, but in the very nature of things the lawmakers in passing the Uniform Declaratory Judgments Act did not intend that a court should enter into a speculative inquiry for the purpose of upholding or condemning statutory provisions, the effect of which, in concrete situations not yet developed, could not be definitely perceived.

Such is tritely expressed in our opinion in *Gabriel v. Board of Regents*, 83 Colo. 582, 587, 267 Pac. 407: "We cannot here decide any other of the various questions raised, however desirable it might be to have them settled, unless we are now willing to answer questions 'which have not yet arisen and which may never arise' and reply to mere 'speculative inquiries.' We cannot thus permit the courts to be converted into legal aid bureaus."

These considerations obviously are of particular pertinence where, as here, no attempt ever has been made to enforce the act or any part thereof. In this circumstance the arguments and contentions of the parties, which, in the interest of brevity, we do not extend, of necessity are premised on anticipatory situations which the parties predict will arise from the administration of the sectors of the act in discussion. The theoretical nature of these forecasts and the extremely divergent views of counsel as to possible constructions and applications of these regulatory provisions, as we view, place this phase of the dispute within the speculative category in which, under the Gabriel case, supra, no declaratory judgment should have been attempted. It is not to be assumed in advance, in any type of action, that a law will be so construed as to bring it into conflict with the Constitution or an act of Congress; nor is it sufficient to show that a state act *might* be so construed and applied as to dilute, impair

or defeat those rights. *Allen-Bradley Local v. Wisconsin Board, supra.* All presumptions are to the contrary. *Consumers' League v. Colorado & S. Ry. Co.,* 53 Colo. 54, 125 Pac. 577, Ann. Cas. 1914A, 1158. The unconstitutionality of a statute must be established beyond a reasonable doubt. *People ex rel. v. Goddard,* 8 Colo. 432, 7 Pac. 301. Nor may we properly hold a statute invalid because we, as a court, or individually, may think there are elements therein which are violative of, or unfair to, natural justice, or in conflict with our notion of the social rights of citizens, not guaranteed by the Constitution. The wisdom or expediency of such measures is a legislative problem. Certainly, it seems to us, any conflicts as to the construction or application of these subsections, if such arise, properly may be resolved only in concrete situations in actual cases.

We, therefore, hold that the trial court erred in rendering any declaratory judgment at all as to sections 6 (1) (c), 6 (2) (g), 6 (2) (l), 8 (15) and 11 (2).

Accordingly, the judgment shall be modified so as to declare an inoperative status for section 6 (2) (e) and the concluding sentence of section 7 (2) as hereinabove expressed and, as so modified, the judgment of the trial court declaring sections 20 and 21 unconstitutional in their entirety and denying invalidity to the act as a whole from alleged infringement with the National Labor Relations Act, is affirmed, but in all other particulars is vacated and held for naught.

Mr. Justice Burke, Mr. Justice Jackson and Mr. Justice Alter concur in part and dissent in part.

Mr. Justice Burke.

Following what I conceive to be controlling decisions of the United States Supreme Court, I concur in the holding that sections 20 and 21 of the act are unconstitutional.

As to all other portions of the judgment I hold it entirely void for the reason that the questions decided were upon issues wholly improper for presentation and adjudication in a declaratory judgment action; hence on these I express no opinion.

I am authorized to say that Mr. Justice Jackson concurs in the foregoing.

Mr. Justice Alter.

I concur in the opinion in so far as it determines that sections 20 and 21 of the Labor Peace Act of Colorado, chapter 131, Session Laws of Colorado 1943 are unconstitutional. I also concur in that portion of the opinion reversing the trial court because of its declaratory judgment entered as to sections 6 (1) (c), 6 (2) (g), 6 (2) (1), 6 (15), and 11 (2).

I dissent from that portion of the opinion in which it is held that sections 7 (2) and 6 (2) (e) are properly considered and determined under the Declaratory Judgments Act.