No. 24900.

THE PEOPLE OF THE STATE OF COLORADO, EX REL. JAMES M. SHAFFER, DIRECTOR OF THE DIVISION OF LABOR OF THE STATE OF COLORADO *v.* INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFERS, WAREHOUSEMEN AND HELPERS OF AMERICA, LOCAL NO. 961, ITS MEMBERS AND AGENTS.

(486 P.2d 10)

Decided June 21, 1971.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, Del J. Ellis, Assistant, for appellant.

William E. Myrick, Theodore M. Smith, John A. Criswell, for appellee.

*En Banc.*

Mr. Justice Erickson delivered the opinion of the Court.

This is an appeal from a decision of the Arapahoe County District Court which held that the Director of the Division of Labor had no authority to enjoin peaceful picketing under 1969 Perm. Supp., C.R.S. 1963, 80-1-32, while unfair labor practice charges were pending before the Colorado Industrial Commission. We affirm the judgment of the trial court.

The unfair labor practice charges arose out of a labor dispute between Centennial Turf Club, Inc., the employer, and the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local No. 961, a collective bargaining unit which represented certain employees of Centennial Turf Club. The Teamsters' Union had represented the employees for approximately twenty years and had been recognized as the employees' collective bargaining unit by the Centennial Turf Club in past contract negotiations. The labor dispute was precipitated by the employer's filing a petition with the Division of Labor for an employees' election to determine the proper collective bargaining unit.

The trial court found the matter to be governed exclusively by provisions of the Labor Peace Act (C.R.S. ch. 80, art. 4). Our research has led us to the same conclusion. Applicable sections of the Act dispose of all issues in the case.

The controversy before us centers around a

"labor dispute," as defined by statute. The applicable portion of the statute provides:

"The term 'labor dispute' means any controversy between an employer and such of his employees as are organized in a collective bargaining unit, concerning the rights or process or details of collective bargaining. . . ." C.R.S. 1963, 80-4-2 (7) (a).

The employer's petition for the selection of a collective bargaining unit by an employees' election was filed in accordance with 1969 Perm. Supp., C.R.S. 1963, 80-4-5. The complaint invoking the jurisdiction of the Division of Labor charged that the employer had refused to bargain collectively with the representatives of his employees. The refusal to bargain collectively in these circumstances is declared to be an unfair labor practice by 1969 Perm. Supp., C.R.S. 1963, 80-4-6 (1) (e). Under the provisions of 1969 Perm. Supp., C.R.S. 1963, 80-4-8, the Director is authorized to investigate every charge which alleges an unfair labor practice. While investigating unfair labor practices, the Director has jurisdiction to issue restraining orders or injunctions to enjoin strikes and lockouts, but not peaceful picketing. His authority is set forth in this statutory language in 1969 Perm. Supp., C.R.S. 1963, 80-4-8 (15) (a):

"The director shall have the power and it shall be his duty . . . in the event there is picketing which . . . might tend to disturb or lead to riots, disturbances, assaults, or disturb the public peace or injure the property or persons of individuals, to limit the number of pickets that may be permitted and to prescribe the distance from any plant, entrance, or exit where such picketing may be permitted, and to otherwise prescribe limits to such picketing, including not only the number of persons picketing, but also the manner or method thereof, and to prevent the use of weapons of any kind or threats or intimidation."

Clearly, the wording of the above section does not provide for issuance of injunctions to restrain peaceful

picketing. This conclusion is reinforced by the following provisions of C.R.S. 1963, 80-4-16(1):

"Except as otherwise provided in *this article*, no court, nor any judge or judges thereof shall have jurisdiction to issue in any case involving or growing out of a labor dispute, as herein defined, any restraining order or temporary or permanent injunction which in specific or general terms prohibits any person or persons from doing, whether singly or in concert, any of the following acts:

. . . .

"(6) Giving publicity to and obtaining or communicating information regarding the existence of, or facts involved in, any dispute, whether by advertising, speaking, without intimidation or coercion, *or by any other method* not involving fraud, violence, breach of the peace, or threat thereof; . . . ." [Emphasis added.]

■ Support for our construction of the statutory language may be found in *Pueblo Building & Construction Trades Council v. Harper Construction Company,* 134 Colo. 469, 307 P.2d 468 (1957), in which this Court held that there is, throughout the provisions of the Labor Peace Act, an express recognition of the right of employees to engage in peaceful picketing. Our holding is also in accord with the opinion of the Colorado Industrial Commission, which reversed the Director's order in this case, and held that the picketing should not be restrained. The Commission found that Director Shaffer's order against picketing "does not implement the prevention of any of the unfair labor practices specified by 80-4-6 and is not otherwise authorized by any provisions of the Labor Peace Act."

Nonetheless, the Director argues that his order was justified under 1969 Perm. Supp., C.R.S. 1963, 80-1-29, 80-1-30, and 80-1-32. We cannot agree. These provisions grant the Director authority to prevent lockouts and strikes, and to maintain all of the conditions of employment in status quo until after the dispute or controversy has been investigated and resolved. Although the phrase

"conditions of employment" is not expressly defined, it is clear that it does not include matters such as union representation and picketing. Rather, "conditions of employment" refers to conditions existing at "places of employment" which directly affect the physical safety, health, and welfare of employees.

Even if these provisions could be interpreted so as to be applicable herein, their application would be in derogation of the plain language of C.R.S. 1963, 80-4-16 (1), *supra*. In addition, they would be rendered without affect by C.R.S. 1963, 80-4-18, which provides:

"Wherever the application of the provisions of other statutes or laws conflict with the application of the provisions of *this article, this article* shall prevail . . . ." [Emphasis added.]

Judgment affirmed.